UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-----------------------------------------------------------------

DOUBLE GREEN PRODUCE, INC.,

                        Plaintiff,

v.

FORUM SUPERMARKET INC., and
HONG WEN CAI,

                        Defendants.

**MEMORANDUM & ORDER**
18-CV-2660 (MKB) (SJB)

-----------------------------------------------------------------

MARGO K. BRODIE, United States District Judge:

      Plaintiff Double Green Produce, Inc. commenced the above-captioned action on May 4, 2018, against Defendants Forum Supermarket Inc. ("Forum") and Hong Wen Cai, asserting claims pursuant to the Perishable Agricultural Commodities Act, 7 U.S.C. § 499a *et seq*. ("PACA"), and claims for failure to pay for goods sold, breach of contract, unlawful dissipation of trust assets by a corporate official, and breach of a personal guaranty. (Compl., Docket Entry No. 1.) Plaintiff alleges that Defendants accepted wholesale quantities of produce but have refused to pay for the goods. (*Id*. ¶¶ 7–8.) Plaintiff served Forum and Cai with a summons and Complaint on May 22, and 30, 2018, respectively. (Summons Returned for Forum, Docket Entry No. 5; Summons Returned for Cai, Docket Entry No. 7.) The Clerk of Court entered a certificate of default against Defendants on June 22, 2018. (Entry of Default, Docket Entry No. 10.)

      On June 27, 2018, Plaintiff moved for a default judgment against Defendants solely pursuant to its PACA claim. (Pl. Mot. for Default J. ("Pl. Mot."), Docket Entry No. 11; Pl. Mem. of Law in Supp. of Pl. Mot. ("Pl. Mem."), Docket Entry No, 14.) By Order dated June 27, 2018, the Court referred Plaintiff's motion to Magistrate Judge Sanket J. Bulsara for a report and

recommendation. (Order dated June 27, 2018.) By report and recommendation dated January 29, 2019, finding that the Court lacks subject matter jurisdiction, Judge Bulsara recommended that the Court deny Plaintiff's motion for default judgment and dismiss the Complaint without prejudice (the "R&R"). (*See generally* R&R, Docket Entry No. 17.) Plaintiff filed an objection to the R&R on February 5, 2019. (Pl. Obj., Docket Entry No. 18.)

By Order dated March 27, 2019, the Court denied Plaintiff's motion for default judgment but granted Plaintiff thirty (30) days to submit additional information that would establish that Forum is a "dealer" within the meaning of PACA. (Order dated Mar. 27, 2019.) On April 25, 2019, Plaintiff submitted a declaration attaching evidence in further support of its motion for default judgment. (Supplemental Declaration of Gregory Brown ("Brown Suppl. Decl."), Docket Entry No. 21.) For the reasons set forth below, the Court grants Plaintiff's motion for default judgment.

I. **Background**

   a. **Factual background**

The Court assumes the truth of the factual allegations in the Complaint for purposes of determining Defendants' liability.

Plaintiff and Defendant Forum are New York corporations with their principal places of business in Brooklyn, New York, and are in the business of buying and selling wholesale quantities of produce. (Compl. ¶¶ 3–4.) During the relevant time period, Cai was "an officer, director and/or shareholder of Forum," who "controlled the operations of Forum," and "upon information and belief was in a position of control over the PACA trust assets belonging to Plaintiff." (*Id.* ¶ 5.)

From November 20, 2017 to January 6, 2018, Plaintiff sold and delivered produce worth $23,080.75 to Defendants. (*Id.* ¶ 7.) Defendants accepted the produce but failed to pay for the

goods when payment was due. (*Id.* ¶ 8.) At the time Defendants received the produce, Plaintiff became a beneficiary of a PACA statutory trust designed to assure payment to produce suppliers."[1] (*Id.* ¶ 9.) Plaintiff "preserved its interest in the PACA trust in the amount of $28,080.75 and remains a beneficiary" until full payment is made on the balance owed. (*Id.* ¶ 10.) Plaintiff alleges that Defendants' failure to pay Plaintiff is an indication that Defendants have not "maintain[ed] sufficient assets in the statutory trust to pay [Plaintiff] and are dissipating trust assets." (*Id.* ¶11.)

Plaintiff seeks $23,080.75 in damages, as well as pre-judgment interest, costs, and attorneys' fees. (*Id.* at 6.)

## II. Discussion

### a. Standard of review

Pursuant to Rule 55 of the Federal Rules of Civil Procedure, there is "a 'two-step process' for the entry of judgment against a party who fails to defend: first, the entry of a default, and second, the entry of a default judgment." *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 128 (2d Cir. 2011) (citing *New York v. Green*, 420 F.3d 99, 104 (2d Cir. 2005)). However, the Second Circuit has an "oft-stated preference for resolving disputes on the merits," *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 95 (2d Cir. 1993), and therefore "[a] plaintiff is not entitled to default judgment as a matter of right, merely because a party has failed to appear or respond," *LG Funding, LLC v. Florida Tilt, Inc.*, No. 15-CV-631, 2015 WL 4390453, at *2 (E.D.N.Y. July 15, 2015) (citing *Erwin DeMarino Trucking Co. v. Jackson*, 838 F. Supp. 160, 162 (S.D.N.Y. 1993)). "[T]he court may, on plaintiffs' motion, enter a default judgment if

---

[1] Plaintiff states that the "trust consists of all produce or produce-related assets, including all funds commingled with funds from other sources and all assets procured by such funds, in the possession or control of Defendants since the creation of the trust." (Compl. ¶ 9.)

3

liability is established as a matter of law when the factual allegations of the complaint are taken as true." *Bricklayers & Allied Craftworkers Local 2, Albany, N.Y. Pension Fund v. Moulton Masonry & Const., LLC*, 779 F.3d 182, 187 (2d Cir. 2015). "A default . . . only establishes a defendant's liability if those allegations are sufficient to state a cause of action against the defendant." *Taizhou Zhongneng Imp. & Exp. Co., Ltd. v. Koutsobinas*, 509 F. App'x 54, 56 (2d Cir. 2013); *LG Funding*, 2015 WL 4390453, at *2 ("To determine whether the default judgment should issue, the [c]ourt examines whether 'the factual allegations, accepted as true, provide a proper basis for liability and relief.'" (quoting *Rolls-Royce PLC v. Rolls-Royce USA, Inc.*, 688 F. Supp. 2d 150, 153 (E.D.N.Y. 2010))).

The decision to grant a motion for default judgment is left to the sound discretion of the district court. *See Finkel v. Romanowicz*, 577 F.3d 79, 87 (2d Cir. 2009) ("In permitting, but not requiring, a district court to conduct a hearing before ruling on a default judgment, Rule 55(b) commits this decision to the sound discretion of the district court."); *Palmieri v. Town of Babylon*, 277 F. App'x 72, 74 (2d Cir. 2008). In determining whether to grant a default judgment, the court looks to the same factors which apply to a motion to set aside a default judgment, namely: (1) whether the defendant's default was willful; (2) whether the defendant has a meritorious defense to the plaintiff's claims; and (3) the level of prejudice the non-defaulting party would suffer as a result of the denial of the motion for default judgment. *See Pecarsky v. Galaxiworld.com, Ltd.*, 249 F.3d 167, 170–71 (2d Cir. 2001); *United States v. Myers*, 236 F. Supp. 3d 702, 706 (E.D.N.Y. 2017).

### b. Defendants' default was willful

The Court first considers whether the default was willful. A default is considered willful where the defendant fails to answer a complaint without explanation or justification. *See S.E.C. v. McNulty*, 137 F.3d 732, 738–39 (2d Cir. 1998); *Myers*, 236 F. Supp. 3d at 707; *see also*

4

*Indymac Bank v. Nat'l Settlement Agency, Inc.*, No. 07-CV-6865, 2007 WL 4468652, at *1 (S.D.N.Y. Dec. 20, 2007) (finding that failure to respond to both the complaint and a motion for default judgment demonstrates willful conduct).

Forum was properly served with a summons and Complaint, which were left with an authorized agent in the Office of the Secretary of State of the State of New York on May 14, 2018. (Summons Returned Executed.) In addition, Cai was properly served at both of his potential addresses. (Decl. of Service ¶¶ 2–4, Docket Entry No. 16.) Despite being properly served, Defendants failed to answer the Complaint, respond to Plaintiff's motion, or otherwise appear in the action. Accordingly, the Court finds Defendants' default to be willful. *See Sola Franchise Corp. v. Solo Salon Studios Inc.*, No. 14-CV-946, 2015 WL 1299259, at *6 (E.D.N.Y. Mar. 23, 2015) ("Defendant has not responded to [p]laintiffs' motion for default judgment, has not appeared in this action, and has not communicated with the [c]ourt in any way. Accordingly, [d]efendant's failure to answer the [c]omplaint and to respond to the instant motion is sufficient to establish willfulness.").

### c. The Court is not aware of any meritorious defenses and Plaintiff would suffer prejudice

The Court is not aware of any meritorious defenses Defendants could present in this matter.

In addition, denying the motion for default judgment would be prejudicial to Plaintiff, "as there are no additional steps available to secure relief in this Court." *Myers*, 236 F. Supp. 3d at 708–09 (quoting *Bridge Oil Ltd. v. Emerald Reefer Lines, LLC*, No. 06-CV-14226, 2008 WL 5560868, at *2 (S.D.N.Y. Oct. 27, 2008)).

### d. Defendants' liability under PACA

Plaintiff argues that Defendants are liable under section 499e(c) of PACA for failing to

promptly pay for the produce they bought from Plaintiff. (Compl. ¶ 6.)

"Congress enacted PACA in 1930 to regulate the sale and marketing of produce in interstate commerce." *Am. Banana Co., Inc. v. Republic Nat. Bank of N.Y., N.A.*, 362 F.3d 33, 36 (2d Cir. 2004). In the 1980s, "Congress determined that sellers needed greater protection" and, in 1984, "amended PACA . . . to make the sellers' interests in the commodities and sales proceeds superior to those of the buyers' creditors, including secured creditors." *Id.* at 37. To effectuate its intent, Congress added section 499e(c), "which requires licensed dealers to hold all perishable commodities purchased on short-term credit, as well as sales proceeds, in trust for the benefit of unpaid sellers":

> Perishable agricultural commodities received by a commission merchant, dealer, or broker in all transactions, and all inventories of food or other products derived from perishable agricultural commodities, and any receivables or proceeds from the sale of such commodities or products, shall be held by such commission merchant, dealer, or broker in trust for the benefit of all unpaid suppliers or sellers of such commodities or agents involved in the transaction, until full payment of the sums owing in connection with such transactions has been received by such unpaid suppliers, sellers, or agents.

*Id.* (quoting 7 U.S.C. § 499e(c)(2)). PACA "defines the corpus of the trust as all produce received from sellers, including 'all inventories of food or other products derived from' the produce, 'and any receivables or proceeds from the sale of such' produce or its derivative products." *R Best Produce, Inc. v. Shulman-Rabin Mktg. Corp.*, 467 F.3d 238, 241 (2d Cir. 2006) (citing 7 U.S.C. § 499e(c)(2)). "PACA provides that a dealer who receives goods or derives proceeds from a wholesaler's produce . . . is to hold those goods in trust for the benefit of the unpaid seller." *S. Katzman Produce, Inc. v. Won*, No. 08-CV-2403, 2009 WL 2448408, at *3 (E.D.N.Y. Aug. 7, 2009) (citing 7 U.S.C. § 499e(c)(2)).

"To enforce payment from the trust, PACA beneficiaries may sue in an appropriate U.S.

6

district court." *Id*. at 38 (citing 7 U.S.C. § 499e(c)(5)(i)). PACA therefore provides a private right of action to trust beneficiaries seeking to enforce payment from the trust. *See* 7 U.S.C. § 499e(c)(5)(i) ("The several district courts of the United States are vested with jurisdiction specifically to entertain (i) actions *by trust beneficiaries* to enforce payment from the trust." (emphasis added)).

To recover proceeds from a PACA created trust, a plaintiff must demonstrate:

> (1) the commodities sold were perishable agricultural commodities; (2) the purchaser of the perishable agricultural commodities was a commission merchant, dealer or broker; (3) the transaction occurred in interstate or foreign commerce; (4) the seller has not received full payment on the transaction; and (5) the seller preserved its trust rights by giving written notice to the purchaser within the time provided by the law.

*A & J Produce Corp. v. Chang*, 385 F. Supp. 2d 354, 358 (S.D.N.Y. 2005) (quoting 7 U.S.C. § 499e)).

### i. The commodities sold were perishable agricultural commodities

PACA defines "perishable agricultural commodities" as "[f]resh fruits and fresh vegetables of every kind and character[,]" whether or not they are "frozen or packed in ice[.]" 7 U.S.C. § 499a(b)(4)(A); *see also* 7 C.F.R. § 46.2(u) (defining "fresh fruits and fresh vegetables" as "all produce in fresh form generally considered as perishable fruits and vegetables"); *Endico v. Potatoes, Inc. v. CIT Group/Factoring, Inc.*, 67 F.3d 1063, 1070–71 (2d Cir. 1995) (stating that PACA "governs only transactions in 'perishable agricultural commodities,' which are defined as, 'whether or not frozen or packed in ice: Fresh fruits and fresh vegetables of every kind and character.'" (quoting 7 U.S.C. § 499a(b)(4)(A))).

Between November 20, 2017 and January 6, 2018, Plaintiff sold wholesale quantities of "produce" to Defendants. (Compl. ¶ 7.) Accepting Plaintiff's allegation as true and drawing all reasonable inferences in Plaintiff's favor, the Court finds that Plaintiff sold perishable

agricultural commodities to Forum. *See Chiquita Fresh N. Am. v. Long Island Banana Corp.*, No. 14-CV-982, 2018 WL 1786991, at *8 (E.D.N.Y. Feb. 28, 2018) (finding the plaintiffs' allegation "that between November 27, 2013 and January 28, 2014, they sold and delivered to [the d]efendants, in interstate commerce, quantities of produce worth $737,272.76, but that [the d]efendants . . . failed to pay for those goods despite repeated demands" sufficient to state a cause of action under PACA), *report and recommendation adopted*, 293 F. Supp. 3d 305 (E.D.N.Y. 2018).

### ii. Defendant Forum is a dealer

Plaintiff alleges that Forum is subject to PACA's provisions as a dealer.[2] (Compl. ¶ 4.)

A "dealer" is described as "any person engaged in the business of buying or selling in wholesale or jobbing quantities, as defined by the Secretary,[3] any perishable agricultural commodity in interstate or foreign commerce." 7 U.S.C. § 499a(b)(6). Although there are three exceptions to PACA's definition of "dealer," the only relevant exception in this action is that "no person buying any such commodity solely for sale at retail shall be considered as a 'dealer' until the invoice cost of his purchases of perishable agricultural commodities in any calendar year are in excess of $230,000." 7 U.S.C. § 499a(b)(6). PACA also provides that "[a]ny person not

---

[2] Plaintiff alleges only that Forum is subject to PACA's provisions as a dealer. (Compl. ¶ 4.) Therefore, Plaintiff's claim is contingent upon whether Forum is a "dealer" under the provisions of PACA. *See Henry Avocado Corp. v. Z.J.D. Brother, LLC*, No. 17-CV-4559, 2017 WL 6501864, at *4 (E.D.N.Y. Dec. 19, 2017) (finding that the plaintiff must plead that defendant was a "commission merchant, dealer, or broker" in "order to demonstrate a claim to the proceeds from a PACA-created trust").

[3] "Wholesale or jobbing quantities" are "aggregate quantities of all types of produce totaling one ton (2,000 pounds) or more in weight in any day shipped, received, or contracted to be shipped or received." 7 C.F.R. § 46.2(x); *In re Old Fashioned Enter., Inc.*, 236 F.3d 422, 424 (8th Cir. 2001) (same).

considered as a 'dealer' under clauses (A), (B), and (C) may elect to secure a license under the provisions of section 499c of this title, and in such case and while the license is in effect such person shall be considered as a 'dealer.'" 7 U.S.C. § 499a(b)(6).

Plaintiff alleges that Forum "was at all relevant times subject to licensure under the provisions of PACA as a dealer." (Compl. ¶ 4.) Plaintiff has submitted evidence that Forum held a PACA license at the time it engaged in the transactions with Plaintiff.[4] (United States Department of Agriculture ("USDA") Public Search for Forum Supermarket Inc. ("USDA Public Record"), annexed to Brown Suppl. Decl. as Ex. A, Docket Entry No. 21-1.) The USDA assigned Forum license number 20150909. (*Id*.) Because Forum was licensed under the provisions of PACA during the relevant time period, Forum is a "dealer" under PACA. *See A & J Produce Corp. v. Harvest Produce Corp.*, No. 16-CV-7239, 2017 WL 3668995, at *3 (S.D.N.Y. Aug. 24, 2017) (finding that the defendant is a "dealer" for purposes of PACA because it is licensed under the provisions of PACA and maintains a license number).

### iii. The transactions occurred in interstate or foreign commerce

PACA defines "interstate or foreign commerce" as "commerce between any State or Territory, or the District of Columbia and any place outside thereof; or between points within the same State or Territory, or the District of Columbia but through any place outside thereof; or within the District of Columbia." 7 U.S.C. § 499a(3). A transaction under PACA is considered to be in interstate commerce if it "is part of that current of commerce usual in the trade in that

---

[4] Courts can take judicial notice of governmental records. *See Richardson v. N.Y.C. Bd. of Educ.*, 711 F. App'x 11, 14 (2d Cir. 2017) (taking judicial notice of documents that "are all public documents, promulgated by or binding on a government agency, and not subject to reasonable dispute . . . ."); *Giraldo v. Kessler*, 694 F.3d 161, 164 (2d Cir. 2012) (holding that courts can take judicial notice of public records). Thus, the Court takes judicial notice of the USDA Public Record attached to Gregory Brown's declaration showing that Forum held a PACA license at all relevant times because it is a public record and its accuracy cannot be subject to reasonable dispute.

commodity whereby such commodity and/or the products of such commodity are sent from one State with the expectation that they will end their transit, after purchase, in another . . . ." 7 U.S.C. § 499a(8). Courts have interpreted the definition of "interstate commerce" broadly. *See Maspeth Trading, Inc. v. New A & N Food Market, Inc.*, No. 13-CV-6454, 2014 WL 3762694, at *5 (E.D.N.Y. June 10, 2014) ("[I]n keeping with the Supreme Court's broad definition of interstate commerce, even purely intrastate transactions may be subject to the PACA's provisions if they are part of the usual stream of commerce that includes other interstate transactions." (citing *Fishgold v. OnBank & Trust Co.*, 43 F. Supp. 2d 346, 349 (W.D.N.Y. 1999))); *see also Gonzales v. Raich*, 545 U.S. 1, 2 (2005) ("Congress' power to regulate purely local activities that are part of an economic 'class of activities' that have a substantial effect on interstate commerce is firmly established.").

Plaintiff alleges that the goods sold to Forum "had been shipped or moved in interstate commerce." (Compl. ¶ 7.) Accepting Plaintiff's factual allegations as true and drawing all reasonable inferences in Plaintiff's favor, Plaintiff has established that the transactions at issue occurred in interstate commerce. *See A & J Produce Corp.*, 2017 WL 3668995, at *3 (finding the plaintiff's allegations that it was "engaged in the business of buying and selling wholesale quantities of produce in interstate commerce," and that the defendant "engaged in the business of buying and selling wholesale quantities of produce in interstate commerce," sufficient to show that the transactions occurred in interstate or foreign commerce).

### iv. Plaintiff has not received full payment on the transactions

Plaintiff contends that "Defendants accepted the produce, but have failed to pay for the goods when payment was due, despite repeated demands, and presently owe Plaintiff the principal amount of $23,080.75." (Compl. ¶ 8.) Thus, Plaintiff has not received full payment on the transactions.

### v. Plaintiff preserved its trust rights by giving written notice to Forum within the time provided by the law

Plaintiff also contends that it "preserved its trust rights under PACA by including the statutory trust language on the face of its invoices to Defendants." (Pl. Mem. 7.)

The PACA permits a seller to preserve its trust rights by providing written notice to the dealer within thirty days after payment was due, 7 U.S.C. § 499e(c)(3), or by including a printed statement on its billing or invoice statements, 7 U.S.C. § 499e(c)(4); *Nathel & Nathel v. Carlos Produce*, No. 08-CV-4880, 2009 WL 3297799, at *2 (E.D.N.Y. Oct. 9, 2009) ("To protect the assets of the trust, the unpaid seller must give the trustee written notice of intent to preserve the trust, or may provide notice of intent 'through its ordinary and usual billing or invoice statement." (quoting 7 U.S.C. § 499e(c)(3))).

Plaintiff's allegation that it "preserved its interest in the PACA trust in the amount of $23,080.75 and remains a beneficiary until full payment is made for the produce" is sufficient to satisfy this element. *See Chiquita*, 2018 WL 1786991, at *8 (finding the plaintiff's allegations that "[a]t the time of receipt of the produce, [the p]laintiffs became beneficiaries to a statutory trust designed to assure payment to produce supplier," and that the plaintiffs "preserved their respective interests in the PACA trust in the amount of $737,328.76 and remain beneficiaries until full payment is made for the produce" sufficient to satisfy the fifth element of a PACA claim); *New Son Yeng Produce N.Y. LLC v. New A & N Food Mkt., Inc.*, No. 13-CV-5012, 2014 WL 3725874, at *6 (E.D.N.Y. July 25, 2014) ("The court is satisfied by the plaintiff's allegation that it became a beneficiary of the trust '[a]t the time of receipt,' since this tends to specify that the plaintiff provided notice to the defendant using [section] 499e(c)(4)'s invoice method, rather than by notifying the defendants after payment was due pursuant to [section] 499e(c)(3).").

In addition, Plaintiff preserved its trust rights by including the necessary statement on the face of all invoices sent to Forum. (Invoices annexed to Cari Decl. as Ex. B., Docket Entry No. 12-1.) The invoices included the following language:

> The Perishable Agriculture Commodities listed on this invoice are sold subject to the statutory trust authorized by section 5(c) of the Perishable Agriculture Commodities Act, 1930 (70 S.C. 499 (c) (2)). The seller of these commodities retains a trust claim over these commodities. All inventories of food or other products derived from these commodities, and any receivables or proceeds from the sale of these commodities until full payment is received. Interest on unpaid balance shall accrue at higher of 18% per year or maximum statutory rate. Buyer agrees to pay interest and attorneys' fees necessary to collect any balance due hereunder. All interest and attorneys' fees due seller shall be considered sums owing in connection with this transaction under the PACA trust.

(Invoices.); *see Giumarra Agricom Int'l, LLC v. Fresh Growers Direct, Inc.*, No. 17-CV-2222, 2018 WL 1136037, at *5 (E.D.N.Y. Jan. 30, 2018) (finding invoices submitted by the plaintiff stating that "the produce was sold subject to the statutory trust authorized by Section 5(C) of PACA and that the seller thus retains a trust claim until full payment is received . . . sufficient to preserve" the plaintiff's PACA rights (internal quotation marks and citation omitted)); *A&J Produce Corp.*, 2017 WL 3668995, at *2–3 (finding similar language on the plaintiff's invoice to be sufficient to preserve the plaintiff's PACA rights).

Accordingly, Plaintiff has satisfied the elements required to establish Forum's liability on its PACA trust claim.

### vi. Individual liability

Plaintiff argues that Defendant Cai, as sole owner and officer of Forum, is personally liable for the debt owed to it. (Pl. Mem. 8.)

"An individual who is in a position to control the assets of the PACA trust and fails to preserve them, may be held personally liable to the trust beneficiaries for breach of fiduciary

12

duty." *Coosemans Specialties, Inc. v. Gargiulo*, 485 F.3d 701, 705 (2d Cir. 2007); *see DiMare Homestead, Inc. v. Alphas Co. of N.Y.*, No. 09-CV-6644, 2012 WL 1155133, at *14 (S.D.N.Y. Apr. 5, 2012) (finding individual defendants personally liable where they were "officers and shareholders of [the company], signatories on its corporate bank accounts, and listed as 'Principals' on its PACA license"), *aff'd*, 547 F. App'x 68 (2d Cir. 2013). "The regulations also provide that purchasers 'are required to maintain trust assets in a manner that such assets are freely available to satisfy outstanding obligations to sellers of perishable agricultural commodities." *R Best Produce*, 467 F.3d at 241–42 (quoting 7 C.F.R. § 46.46(d)(1)).

Plaintiff contends that Defendant Cai "was an officer, director and/or shareholder of Forum during the period of time in question who controlled the operations of Forum, and upon information and belief was in a position of control over the PACA trust assets belonging to Plaintiff." (Compl. ¶¶ 5, 29–33.) In support of its allegations, Plaintiff submits a credit application from Cai in which Cai represents herself to be the President of Forum. (Credit Appl. Agreement 1, annexed to Decl. of Gregory Brown ("Brown Decl.") as Ex. H, Docket Entry No. 13-1.) In addition, Cai is listed as one of Forum's reported principals on the USDA's public database. (USDA Public Record.) In light of the allegations in Plaintiff's Complaint and the documentary evidence submitted in support thereof, it is reasonable to infer that Cai had control over Forum's trust assets. Plaintiff further alleges that "Cai's failure to direct [Forum] to maintain PACA trust assets and pay [Plaintiff] for the produce it supplied was an unlawful dissipation of trust assets by a corporate official." (Compl. ¶ 32.)

Accepting Plaintiff's allegations as true, Cai breached her fiduciary duty as a PACA trustee and is therefore personally liable for the failure to preserve PACA trust assets for Plaintiff's benefit. *See Coosemans Specialties*, 485 F.3d at 705 (finding that the parties did not dispute that the president of a close corporation had sufficient control over trust assets); *Mission*

*Produce, Inc. v. AP Royal Product, Inc.*, No. 16-CV-7015, 2017 WL 2274972, at *2 (E.D.N.Y. May 24, 2017) ("[A]llegations in the complaint as to the individual [defendant's] control of the business are sufficient to impose liability."); *G and P Warehouse, Inc. v. Cho's Church Ave Fruit Market Inc.*, No. 15-CV-6174, 2016 WL 5802747, at *5–6 (E.D.N.Y. Aug. 12, 2016) (same); *Maspeth Trading Inc.*, 2014 WL 3762694, at *6 (finding that the plaintiff's allegations that the individual defendant was a "principal officer, director and shareholder" who "directed all of the activities and operations of" the corporate defendant established joint and several liability between defendants on motion for default judgment).

### e. Damages

Having established Defendants' default and their liability under PACA, the Court determines the appropriate award of damages.

On a motion for default judgment, "[w]hile a party's default is deemed to constitute a concession of all well pleaded allegations of liability, it is not considered an admission of damages." *Cement & Concrete Workers Dist. Council Welfare Fund, Pension Fund, Annuity Fund, Educ. & Training Fund & Other Funds v. Metro Found. Contractors Inc.*, 699 F.3d 230, 234 (2d Cir. 2012) (alteration in original) (quoting *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992)). "Upon entry of a default, a plaintiff's claims for damages generally must be established in an evidentiary proceeding at which the defendant is afforded the opportunity to contest the amount claimed," however, "such a hearing is not mandatory." *Id.* No hearing is required "as long as [the court] ensure[s] that there [i]s a basis for the damages specified in the default judgment," *Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., Div. of Ace Young Inc.*, 109 F.3d 105, 111 (2d Cir. 1997) (citations omitted), and this requirement may be satisfied "upon a review of detailed affidavits and documentary evidence," *Metro Found. Contractors Inc.*, 699 F.3d at 234; *see also McLean v. Wayside*

14

*Outreach Dev. Inc.*, 624 F. App'x 44, 45 (2d Cir. 2015) ("Even when the [district] court determined damages with the aid of a single affidavit only partially based upon real numbers, we have not found an abuse of discretion in the district court's failure to hold an evidentiary hearing." (citations and internal quotation marks omitted)).

### i. Principal amount

John Cari, Plaintiff's manager, declares that Defendants have failed to pay for goods they purchased in the amount of $23,080.75. (Decl. of John Cari ("Cari Decl.") ¶5, Docket Entry No. 12; Compl. ¶ 41(a).) In support, Plaintiff submits copies of invoices reflecting all sums due from Defendants as well as an account statement. (Invoices; Account Statement, annexed to Cari Decl. as Ex. A, Docket Entry No. 12-1.) The invoices, which are dated between November 20, 2017 and January 6, 2018, each reflect the quantity and price of goods sold. (Invoices.) The Court's own calculation of the sums of each both invoices amounts to $23,080.75. Thus, the Court awards Plaintiff $23,080.75 for unpaid produce sold to Defendants between November 20, 2017 and January 6, 2018. *See Hop Hing Produces Inc. v. X & L Supermarket, Inc.*, No. 12-CV-1401, 2013 WL 1232919, at *8 (E.D.N.Y. Mar. 4, 2013), *report & recommendation adopted*, 2013 WL 1232948 (E.D.N.Y. Mar. 26, 2013) (relying upon invoices submitted as exhibits to determine damages).

### ii. Interest

In addition to the outstanding balance on the invoices, Plaintiff seeks contractual pre-judgment interest up to the date of judgment.

District courts routinely enforce contractual prejudgment interest provisions under PACA. *See Coosemans Specialties*, 485 F.3d at 709 (affirming judgment awarding principal, interest, and attorneys' fees to the plaintiffs under PACA); *Endico Potatoes, Inc. v. CIT Group/Factoring, Inc.*, 67 F.3d 1063, 1071–72 (2d Cir. 1995) (affirming award of prejudgment

interest for PACA claim); *S. Katzman Produce, Inc. v. JAT Beverage Inc.*, No. 17-CV-7930, 2018 WL 6437058, at *5 (S.D.N.Y. Dec. 7, 2018) ("It is similarly settled that reasonable contractual prejudgment interest provisions are enforceable under PACA." (citing *Tomato Mgmt., Corp. v. CM Produce LLC*, No. 14-CV-3522, 2014 WL 2893368, at *1 (S.D.N.Y. June 26, 2014))); *Dayoub Mktg., Inc. v. S.K. Produce Corp.*, No. 04-CV-3125, 2005 WL 3006032, at *4 (S.D.N.Y. Nov. 9, 2005) (finding that where the parties' contract so provides, "the interest and collection costs become subject to the PACA trust together with the principal debt").

Plaintiff's invoices state that Plaintiff is entitled to recover interest at an annual rate of 18%. (Invoices.) The Court finds the contractual interest rate reasonable. *See S. Katzman Produce*, 2018 WL 6437058, at *5 (finding a contractual interest rate of 18% reasonable). Therefore, the Court awards Plaintiff accrued interest through April 25, 2019 in the amount of $5579.82.

### iii. Attorneys' fees

Plaintiff also argues that it is entitled to attorneys' fees in the amount of $4074.25. (Pl. Mem. 9–10; Brown Suppl. Decl. 3.)

The Second Circuit has confirmed that, "where the parties' contracts include a right to [reasonable] attorneys' fees, they can be awarded as 'sums owing in connection with' perishable commodities transactions under PACA." *Coosemans Specialties*, 485 F.3d at 709 (citations omitted). Plaintiff's attorney submitted a billing statement describing the time spent working on this action. (Detail Transaction File List, annexed to Brown Decl. as Ex. J, Docket Entry No. 13-1.) Brown charged at his normal hourly rate of $375 and his colleague, Louis W. Diess, III, charged at his normal hourly rate of $400. (Brown Decl. ¶ 15.) Both worked on this matter for a

16

combined total of 9.90 hours.[5] (Detail Transaction File List.) The Court finds that the rates and times charged by Plaintiff's attorneys are reasonable and awards Plaintiff attorneys' fees in the amount of $4074.25.

### III. Conclusion

For the foregoing reasons, the Court grants Plaintiff's motion for default judgment. The Court finds that Plaintiff is entitled to $23,080.75 in damages, $5579.82 in accrued prejudgment interest through April 25, 2019, and attorneys' fees in the amount of $4074.25, for a total of $32,734.82. Interest in the amount of $11.38 per day shall continue to accrue from April 26, 2019 through and including the date of entry of judgment. The Clerk of Court is directed to enter judgment and close this case.

Dated: May 17, 2019
      Brooklyn, New York

SO ORDERED:

     s/ MKB
MARGO K. BRODIE
United States District Judge

---

[5] Plaintiff's attorneys only request attorneys' fees for time spent working on this matter through June 26, 2018. (Brown Decl. ¶ 14; Brown Suppl. Decl. ¶ 7; Detail Transaction List.)